**REINBOLT, Appellant,**

v.

**KERN, Appellee.**

[Cite as *Reinbolt v. Kern,* 183 Ohio App.3d 287, 2009-Ohio-3492.]

Court of Appeals of Ohio,
Sixth District, Wood County.

No. WD–08–043.

Decided July 17, 2009.

Drew A. Hanna, for appellant.

Beryl Stewart, for appellee.

HANDWORK, Judge.

{¶ 1} This appeal is from the April 21, 2008 judgment of the Wood County Court of Common Pleas, which awarded appellant, John F. Reinbolt Jr., as guardian of Lori D. St. Clair and Arlene St. Clair, nominal damages following the entry of a default judgment. Upon consideration of the assignments of error, we

affirm the decision of the lower court in part and reverse in part. Appellant asserts the following assignments of error on appeal:

{¶ 2} "1. It is error for the court to not admit the records from Social Security showing the payments received by the appellee/defendant, where the appellee/defendant admits these records to be accurate. Plaintiff's Exhibits: 7, 8, 10, 11, & 12.

{¶ 3} "2. In the alternative, the trial court errs by excluding plaintiff's exhibits on the grounds they are neither authenticated nor self-authenticating.

{¶ 4} "3. In this claim for *liquidated* damages, it is error for the court to find appellant/plaintiff's evidence to be insufficient.

{¶ 5} "4. The St. Clair's [sic] testify appellee/defendant withheld portions of their Social Security payments; they also testify as to the amount withheld by the appellee/defendant; therefore, it is error for the court not to grant judgment in their behalf for the amounts withheld by the appellee/defendant.

{¶ 6} "5. It is error for the court not to grant judgment on the money taken by the appellee/defendant from Arlene St. Clair at her loan closing.

{¶ 7} "6. It is error for the court not to grant judgment to the appellant/plaintiff on appellee/defendant's conversion of the insurance policies belonging to Arlene St. Clair.

{¶ 8} "7. It is error for the court to deny appellant/plaintiff's motions for new trial, relief from judgment, and leave to obtain certification of Social Security records.

{¶ 9} "8. By operation of Evidence Rule 803(8) it is error for the court not to admit the Social Security records."

{¶ 10} On October 16, 2007, appellant, John F. Reinbolt Jr., as guardian of Lori D. St. Clair and Arlene St. Clair, filed an action against appellee, Linda Kern. Reinbolt alleged that Kern received Social Security benefits paid for the benefit of her cousins, the St. Clairs ($61,585.40 for Lori D. St. Clair and $26,764.20 for Arlene St. Clair) after the death of their parents and that Kern appropriated a portion of the funds for her own use. It was alleged that Kern received checks from the Social Security Administration on behalf of the St. Clairs, who have mental disabilities. Kern allegedly deposited the funds into her own bank account and then gave the St. Clairs only half the money. Kern also allegedly did not give Arlene St. Clair $1,989.35 of the loan proceeds she received from Citizens Saving Bank Co. on August 14, 2004, did not repay the loan made by Arlene St. Clair to Kern, or made false statements to Arlene St. Clair to mislead her into giving Kern the money. Finally, Reinbolt alleged that the St. Clairs had received insurance policies from their parents (with a minimum value of at least

$10,000), which Kern secretly or fraudulently arranged to either cash in with distributions payable to her or to have transferred to her.

{¶ 11} Kern did not file an answer in response to the complaint, and default judgment was entered against her. The matter then went to hearing on the issue of damages on April 9, 2008. Following the hearing, the court entered its judgment on April 21, 2008. The trial court found that Reinbolt had failed to enter sufficient evidence to support his claim for damages regarding the misappropriation of the Social Security benefits. The court found that copies of the Social Security Administration records were not admissible because they were neither authenticated by a witness nor self-authenticating certified copies. The court also found that the only evidence presented indicated that the loan proceeds had been given to the wards. The court awarded Reinbolt $1 for nominal damages.

{¶ 12} Reinbolt then moved for relief from judgment on the basis of Civ.R. 60(B)(1) and (5) for excusable neglect or other reasons justifying relief. Reinbolt asserted that he attempted to subpoena the manager of the Bowling Green Social Security Office on March 17, 2008, but was informed that he was not subject to subpoena and outlined the necessary steps that Reinbolt would have to take to obtain certified copies of the records. Reinbolt asserted that he did not have sufficient time to obtain such a copy prior to the hearing. Reinbolt also sought additional time to obtain such copies. Reinbolt also asserted in a supplemental motion for relief from judgment that the trial court erred by failing to admit the Social Security records presented by Reinbolt at the hearing. Furthermore, he argues that any error in the authenticity of the records should have gone to the weight of the evidence rather than its admissibility.

{¶ 13} Reinbolt also moved for a new trial pursuant to Civ.R. 59(A)(5) on the basis that there had been an error in the amount of recovery. Reinbolt asserted that the trial court's finding that the loan proceeds had been delivered to the wards was incorrect based upon the closing statement admitted into evidence. Furthermore, Reinbolt asserted that the trial court did not address the conversion of the life insurance policies. In a supplemental motion, Reinbolt further argued that a new trial was warranted pursuant to Civ.R. 59(A)(6) because the trial court had overlooked the testimony of the wards themselves, who testified that Kern did not pay them the entire amount of their Social Security benefits each month. Reinbolt further argued that a new trial was warranted pursuant to Civ.R. 59(A)(3) because he was surprised by the trial court's ruling on the admissibility of the Social Security records; that decision was not rendered until after the hearing was concluded. Kern opposed the motions.

{¶ 14} In three separate judgments, all journalized on May 15, 2008, the court denied Reinbolt's motion for leave to obtain the certification of the Social Security

records, denied Reinbolt's motion for relief from judgment, and denied Reinbolt's motion for a new trial. Reinbolt then sought an appeal from these judgments.

{¶ 15} We begin by reviewing the evidence submitted at the damages hearing on March 17, 2008. Reinbolt testified that he was appointed as guardian for the St. Clairs in 2006. He had been contacted by Arlene St. Clair as to what help they would be able to receive for housing and food because they did not have enough funds. He sent her to the Social Security Administration to determine how much she received in Social Security disability benefits. When she returned, she questioned whether the report the office had given her was correct because she did not get that much money. He called the Social Security Administration to confirm the amount. Reinbolt investigated the matter and determined from the St. Clairs that they were receiving only approximately half of their Social Security payments from Kern.

{¶ 16} From December 1995 until Reinbolt was appointed guardian in November 2006, Kern was the payee of the St. Clairs' Social Security benefits. Reinbolt obtained records from the Social Security Administration regarding the benefits paid to the St. Clairs. He then prepared a summary of the Social Security benefits paid to Kern on behalf of the St. Clairs during this period and the total portion of those funds that Kern had allegedly retained. Kern objected to the testimony on the ground that the copy of the report from the Social Security Administration was inadmissible hearsay, as it was not properly authenticated and was not self-authenticating.

{¶ 17} When Lori St. Clair testified, Kern objected to some of her answers due to the leading nature of the questions. It is somewhat unclear from the transcript as to how much Lori St. Clair understood the questions and whether she was testifying as to what Reinbolt's summary stated or what she remembered receiving from Kern. However, she clearly testified that Kern and her sister Arlene went to the bank in August 2001 and took out a loan for $4,000, with the proceeds being paid to Kern. St. Clair also testified that she and her sister each had insurance policies through Western & Southern with values of $5,000 that Arlene St. Clair had signed over to Kern.

{¶ 18} Arlene St. Clair testified that Kern always paid both Arlene and her sister $435 each month by check. Arlene St. Clair became suspicious that they were not receiving their full benefits when they were no longer able to pay their bills. She contacted Reinbolt to investigate the matter and he was eventually named as their guardian. She learned that each of them was supposed to be receiving $900 each month. She testified that she assisted Reinbolt in his preparation of the summary of benefits she should have received and what she actually did receive. Reading from the summary, she testified that she should have received an additional $26,764.20 and her sister should have received

$61,585.40. Kern objected to Arlene St. Clair's testimony as well because it was based upon hearsay since she admitted that she had no personal knowledge of what Social Security benefits were paid on her behalf.

{¶ 19} Arlene St. Clair also testified that Kern had retained the proceeds from a loan from the bank. Arlene St. Clair recalled that the loan was taken out to pay off credit card debt of $2,060. However, Kern was also paid nearly $2,000 out of the loan proceeds. Kern had told Arlene that she owed it to Kern, but Arlene believed that Kern just took the money. Arlene St. Clair also testified that Lori St. Clair assigned her insurance policy to Arlene and that Arlene had then assigned it to Kern, but Arlene did not know why.

{¶ 20} Kern objected throughout the hearing that all the damage amounts were based upon hearsay evidence and that the Social Security records were inadmissible because they were not properly authenticated. Reinbolt had not expected to have to actually prove his damages at the hearing and was not prepared to produce the actual records. The trial court continued the matter to give Reinbolt additional time to obtain the records.

{¶ 21} At a subsequent hearing on April 9, 2008, Reinbolt again attempted to testify from his summary and the uncertified copy of the records of the Social Security Administration and information he or his attorney received when they visited the office. Kern objected to the admission of all of Reinbolt's evidence on the ground of hearsay. Reinbolt argued that he was not required to prove his damages following a default judgment and that the foundation objections were inappropriate in the damage hearing. Furthermore, Reinbolt argued that he attempted to subpoena an employee of the Social Security Administration to certify their records, but received a letter that they are not subject to subpoena. The court indicated that it would take the issue under advisement because the court was unsure whether the rules of evidence would apply in a default judgment hearing on damages, but the court understood the objections of Kern and agreed that the Social Security records had not been authenticated, although the court believed that the testimony of the parties laid a foundation for their admission.

{¶ 22} Kern then testified that she thought of the St. Clairs as sisters and had become the payee for Lori St. Clair's Social Security benefits at the request of her mother in 1995 after she had become very ill. During that year, Kern paid all of the benefits to Lori St. Clair's mother. Kern completed the paperwork to obtain Social Security benefits for Arlene St. Clair in 2001. After the death of the St. Clairs' mother, Kern gave the St. Clairs all of the benefits at the beginning of each month. But because they would spend all of the money immediately and then borrow additional funds from Kern, they agreed that Kern should not pay them all the Social Security benefits at once. Kern did not keep

records for more than two years as required by the contract with the Social Security Administration to be a payee. Each year, Kern prepared a report that was filed with the Social Security Administration. She was never questioned by the administration as to her reports. Kern testified that the St. Clairs were with her each year when she prepared the report. Kern denied ever taking any of their funds. She also denied giving them only $435 each month. She would have produced copies of her bank records but could not afford to pay the bank $7 a page for copies of the documents. She did have some cancelled checks for December 2005 showing a payment of $905. Kern denied depositing their money into her own account. Lori St. Clair's check was direct deposited into an account in her name and Kern's. Arlene St. Clair's check was mailed to Kern, and she would cash it or deposit it and write Arlene St. Clair a check and keep some in cash.

{¶ 23} With respect to the loan from the bank, Kern testified that the loan was necessary to pay off the credit-card debt that Arlene St. Clair had accumulated. At the same time, the sisters had damage to their home and could not pay for repairs, and Kern had advanced them the money. It was agreed that Arlene would take out a loan to eliminate the interest rates on her credit-card debt and reimburse Kern for the monies she had advanced to them.

{¶ 24} Kern's soon-to-be ex-husband testified that he witnessed his wife give the St. Clairs cash. Most of the time, it was Lori St. Clair who came to get the money. The St. Clairs would return later for more money. His wife always told them to bring receipts back to her. He knew that his wife did not give them all of their benefits at one time because they would spend whatever they received. He is sure that there were others who had witnessed this as well, but he could not remember anyone specifically because of the length of the time period. He recalled arguing with Kern about giving the St. Clairs money when they were not responsible.

{¶ 25} Kern's son testified that he witnessed his mother give Arlene St. Clair money and that he also witnessed that the two sisters would return several times a month for more money. He never heard of any problems with the sisters about not receiving their money.

{¶ 26} Debbie Stiger, Kern's friend, testified that the St. Clairs would come to Kern several times a month for money. She also recalled arguing with Kern about giving the St. Clairs money.

{¶ 27} All assignments of error in this case related to the damages hearing following the entry of a default judgment. Civ.R. 8(D) provides: "Averments in a pleading to which a responsive pleading is required, other than those as to the amount of damage, are admitted when not denied in the responsive

pleading." Civ.R. 55(A) provides: "If, in order to enable the court to enter judgment or to carry it into effect, it is necessary to take an account or to determine the amount of damages or to establish the truth of any averment by evidence or to make an investigation of any other matter, the court may conduct such hearings or order such references as it deems necessary and proper and shall when applicable accord a right of trial by jury to the parties." Thus, even though a party defaults and admits the allegations of the complaint, the plaintiff must still establish his damages. *Turner v. Progressive Ins. Co.*, 5th Dist. No. 2007 CA 015, 2008-Ohio-4988, 2008 WL 4382698, ¶ 26, and *McIntosh v. Willis*, 12th Dist. No. CA2004–03–076, 2005-Ohio-1925, 2005 WL 941136.

{¶ 28} The determination of the damage award is a factual determination that must be supported by the evidence and, therefore, will not be overturned on appeal unless it is contrary to the manifest weight of the evidence. *Mt. Pleasant Volunteer Fire Dept. v. Stuart*, 7th Dist. No. 01 JE 11, 2002-Ohio-5227, 2002 WL 31169058, ¶ 30. Appellant's first two assignments of error relate to the admissibility of the evidence. As to these issues, we review the trial court's determination under an abuse-of-discretion standard. *Peters v. Ohio State Lottery Comm.* (1992), 63 Ohio St.3d 296, 299, 587 N.E.2d 290.

{¶ 29} Appellant argues in his first assignment of error that the trial court erred by excluding from evidence as hearsay the copies of the Social Security Administration records. Reinbolt argues that Kern verified that the records were accurate insofar as she testified that she would not question their accuracy. Therefore, Reinbolt argues, these documents are not hearsay pursuant to Evid.R. 801(D)(2)(b). Furthermore, in his eighth assignment of error, appellant argues that the trial court erred by refusing to admit the Social Security records into evidence under Evid.R. 803(8). That section provides that public records and reports are not hearsay.

{¶ 30} The trial court did not find that the Social Security records were inadmissible hearsay. It specifically held that the records were admissible as public records under Evid.R. 803(8). However, it found that the documents were inadmissible because they were not authenticated. The issue of the authenticity of the documents is addressed under appellant's second assignment of error and rejected. Therefore, we find appellant's first and eighth assignments of error not well taken.

{¶ 31} In his second assignment of error, appellant argues that the trial court erred by excluding these same documents from evidence because the documents were neither certified nor authenticated as required by Evid.R. 901. Reinbolt first argues that the documents were authenticated under Evid.R.

901(B)(1) by the testimony of Kern, as a witness with knowledge, that these were accurate records from the Social Security Administration.

{¶ 32} While Kern testified that she did not question the accuracy of the amount that was set forth in the documents presented to her by Reinbolt, her testimony was not sufficient to establish that these documents were authentic. Kern was not a person with knowledge of the documents so that she could testify that these were accurate documents produced by the Social Security Administration. There also was insufficient evidence to support a finding that Kern admitted the authenticity of the documents. Kern merely testified that she had no idea what the benefit amounts were and that the numbers set forth in the documents appeared to be accurate and that she did not question the amounts that were owed to the St. Clairs. Kern never testified that she received the documents in the mail from Social Security.

{¶ 33} Second, Reinbolt argues that he authenticated the documents at issue by presenting evidence of their distinct characteristics pursuant to Evid.R. 901(B)(4) or that they were self-authenticating under Evid.R. 902(7). Reinbolt argues that the documents at issue contain identifying language that they were produced by the Social Security Administration, and he testified that he obtained the documents from that office. Appellant relies upon *State v. Clites* (1991), 73 Ohio App.3d 36, 596 N.E.2d 550; *State v. Hawkins*, 8th Dist. No. 81646, 2003-Ohio-4934, 2003 WL 22145823, ¶ 19; and *State v. DeLeon* (May 19, 2000), 2d Dist. No. 17574, 2000 WL 646502.

{¶ 34} We disagree. The fact that the documents contain the title "Social Security Administration" does not establish that they are authentic. There is nothing unique about the records. Furthermore, even though two documents appear to be standardized printed forms from the Social Security Administration, there is nothing to establish that the information contained on the form is authentic. Finally, there is nothing unique in the circumstances surrounding their discovery that resolves the issue of authenticity. The self-serving testimony of Reinbolt that he obtained the documents from the Social Security Administration and that the documents are authentic is also insufficient to authenticate the documents. To hold that these documents are admissible because they look like official agency documents would eliminate the need for authenticating any non-certified copy of a public record. Therefore, Reinbolt has failed to establish that the trial court abused its discretion by refusing to admit the documents into evidence.

{¶ 35} Appellant's second assignment of error is not well taken.

{¶ 36} In his third assignment of error, appellant argues that because he presented a liquidated claim for damages, the trial court erred by requiring

appellant to prove the amount of damages. We disagree. First, appellant did not present a liquidated claim for damages. While appellant could establish the exact amount of funds that Kern received as payee of the Social Security benefits, there was nothing certain about the amount that she distributed to the wards. Therefore, the trial court did not err in holding an evidentiary hearing to determine the amount of damages recoverable. Appellant's third assignment of error is not well taken.

{¶ 37} In his fourth assignment of error, appellant argues that the trial court erred by finding that he had not presented sufficient evidence of damages. Appellant argues that the St. Clairs testified that Kern paid them only $435 by check each month, which was only a portion of their Social Security benefits paid to Kern each month on their behalf.

{¶ 38} Because the award of damages is a discretionary matter, we will not reverse a trial court's decision regarding its determination of damages absent a showing that the trial court abused its discretion. *Roberts v. United States Fid. & Guar. Co.* (1996), 75 Ohio St.3d 630, 634, 665 N.E.2d 664, and *Norfolk S. Ry. Co. v. Toledo Edison Co.*, 6th Dist. No. L–06–1268, 2008-Ohio-1572, 2008 WL 853531, ¶ 56. An abuse of discretion occurs only if the court renders an unreasonable, arbitrary, or unconscionable judgment. *Blakemore v. Blakemore* (1983), 5 Ohio St.3d 217, 219, 5 OBR 481, 450 N.E.2d 1140.

{¶ 39} Appellant fails to set forth all of the evidence before the court. The St. Clairs testified that they did not receive all their Social Security benefits. However, their appreciation of the facts is questionable. The trial court was in the best position to resolve the interpretation of their testimonies. Furthermore, there was also testimonial evidence on behalf of Kern that indicated that while she did not distribute the benefits in a systematic and orderly fashion, she attempted to give the St. Clairs all their benefits and, on occasion, additional funds as they needed them. The trial court, which was in the best position to consider the credibility of the witnesses, determined that appellant had not proven an exact amount of money that Kern had misappropriated. Even had appellant's additional documentary evidence been admitted into evidence, appellant failed to prove exactly how much of the Social Security benefits Kern paid the St. Clairs and how much she retained. Therefore, appellant has failed to demonstrate that the trial court's finding of damages was an abuse of discretion. Appellant's fourth assignment of error is not well taken.

{¶ 40} In his fifth assignment of error, appellant argues that the trial court erred by failing to award him damages for the money taken by Kern during a loan closing. We agree. The St. Clairs both testified that Arlene St. Clair took out a loan from the bank in August 2001 to pay off credit card debt of $2,060.

They knew that Kern was also paid nearly $2,000 out of the loan proceeds, but they did not know why. Kern also admitted receiving a portion of the money from the bank as part of the loan transaction. The testimonies of these witnesses were sufficient to authenticate the copy of loan documents appellant presented to the court.

{¶ 41} Furthermore, because the amount of money received by Kern was proven to be $1,989.35 and Kern, because of the default judgment, had admitted to the allegation of the complaint that she had defrauded Arlene St. Clair to obtain this money, appellant was entitled to a damage award of this amount. We find that the trial court abused its discretion by not awarding this amount as damages. Appellant's fifth assignment of error is well taken.

{¶ 42} In his sixth assignment of error, appellant argues that the trial court erred by failing to grant him damages for Kern's conversion of the insurance policies. We agree. The St. Clairs testified that they each had a $5,000 insurance policy through Western & Southern. Lori St. Clair assigned her policy to Arlene St. Clair, and Arlene then assigned both polices to Kern. Neither sister could testify why this was done. We find that this testimony alone was sufficient to authenticate the insurance-policy documents presented by appellant. Therefore, we find that the trial court abused its discretion by not admitting these documents into evidence.

{¶ 43} Furthermore, since there was evidence that the insurance policies were assigned to Kern, and because of the default judgment by which Kern had admitted to the allegation of the complaint that she had fraudulently misappropriated these policies, appellant was entitled to a damage award of the return of the policies or their cash value of $10,000. The trial court abused its discretion by not awarding this amount as damages. Appellant's sixth assignment of error is well taken.

{¶ 44} In his seventh assignment of error, appellant argues that the trial court erred by denying his motions for a new trial, for relief from judgment, or for leave to obtain certification of the Social Security Administration records.

{¶ 45} Appellant filed for a new trial based upon Civ.R. 59(A)(5) alleging that there had been an error in the calculation of damages because the court did not address the issue of damages relating to the loan closing or the conversion of the life insurance policies. We find this issue moot in light of the reversal of the trial court's decision as to these matters. Appellant also sought a new trial under Civ.R. 59(A)(7), alleging that the judgment was contrary to law because the uncertified Social Security records should have been admitted through the testimony of appellant. We have already addressed this issue and have rejected it. Appellant also moved for a new trial under Civ.R. 59(A)(4) and (6), alleging

that the judgment was erroneous and contrary to the manifest weight of the evidence because the wards themselves testified as to how much Social Security benefits they received from Kern. We have already addressed this issue and have rejected it. Finally, appellant moved for a new trial under Civ.R. 59(A)(3) alleging accident or surprise because he did not know the court's ruling on the admissibility of the records until after the hearing had been concluded. This allegation did not justify a new trial in this case. Throughout the hearing, the issue of the admissibility of the records was at issue, and an adverse ruling was not a surprise.

{¶ 46} Appellant also sought leave to obtain certified copies of the Social Security records. As discussed above, even if appellant had obtained records that were admissible into evidence, he failed to prove his damages.

{¶ 47} Appellant also sought relief from judgment under Civ.R. 60(B)(5), alleging that the court had erred in not admitting the Social Security records into evidence. We have already addressed this issue above and have rejected it.

{¶ 48} Therefore, we conclude that the trial court did not err by denying appellant the relief he sought. Appellant's seventh assignment of error is not well taken.

{¶ 49} Having found that the trial court did commit error prejudicial to appellant, the judgment of the Wood County Court of Common Pleas is affirmed in part and reversed in part. The judgment is reversed only insofar as damages were not awarded for the loan proceeds obtained by Kern and the conversion of the life insurance policies. This matter is remanded to the trial court for further proceedings. Appellee is ordered to pay the costs of this appeal pursuant to App.R. 24.

Judgment reversed in part
and affirmed in part.

SINGER and OSOWIK, JJ., concur.